IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELSIE ON-THE-HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-cv-266-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Plaintiff Elsie On-The-Hill seeks judicial review of a decision of the Commissioner of the

Social Security Administration denying a portion of her claim for disability insurance and

supplemental security income benefits under Titles II and XVI of the Social Security Act

("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A).  In accordance with 28 U.S.C. §

636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge.

(Dkt. # 9).[1]

## Introduction

A claimant for disability benefits bears the burden of proving a disability.  42 U.S.C. §

423(d)(5); 20 C.F.R. § 404.1512(a).  "Disabled" is defined under the Act as an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To meet this burden, a plaintiff must provide medical evidence of his/her impairment and

---

[1]  Plaintiff's applications for disability insurance benefits and SSI were denied initially and on
reconsideration.  A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held
on May 21, 2007. (R. 24-58).  By decision dated July 20, 2007, the ALJ entered the findings that
are the subject of this appeal.  (R. 12-23).  The Appeals Council denied plaintiff's request for
review on March 13, 2008.  (R. 2-8).  The decision of the Appeals Council represents the
Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

medical evidence of the severity of the impairment during the time of her alleged disability. 20

C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A

physical impairment must be established by medical evidence consisting of signs, symptoms, and

laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§

404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed

and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was born on July 12, 1951. (R. 29). Plaintiff has a GED and is twice divorced.

(R. 29, 101-2). She cleans her house, watches TV, plays video games, takes care of her cat, and

swims. (R. 329-32). Plaintiff's work history includes: receptionist at a furniture store, a janitor,

line worker in a poultry facility, a telephone operator, cannery worker, nurses' aid, customer

service representative, and supervisor in data support, along with some work for a temporary

service in the area of motor assembly. (R. 21, 30, 48-50). These jobs ranged in level from light

to heavy. Id.

During her most recent employment, she was a supervisor with Decision One, where she

was required to handle phone calls from customers who, at times, made sexually inappropriate

comments and used profanity. (R. 31-33). Plaintiff was not allowed to hang up on a customer

when these instances occurred, and having to listen to these customers was very frustrating to

plaintiff. Id. As a result, she began screaming out of her car window on her way home to relieve

the frustration. Id. Eventually, the screaming did not help, and she started crying. (R. 33-34).

Plaintiff saw a doctor at the Jenks Health Clinic on the morning that the crying started. (R. 34).

According to plaintiff, the doctor "gave me some pills, but they didn't help. She tried everything

in the world, all kinds of different psychotropic drugs, but nothing helped." Id. Plaintiff

continued having problems crying through September, 2005, when she told her roommate that she was going to kill herself.  Her roommate called Parkside Psychiatric Hospital and checked plaintiff into the facility.  Id.

At the time of the hearing, plaintiff testified that she ". . .still ha[s] a lot of those things.  I just don't cry all the time like I was. . .."  (R. 34).  Plaintiff testified that she does not always attend her follow up sessions at Parkside or take the medication that has been prescribed for her, because she cannot afford to do so.  (R. 36).  Plaintiff continues to have feelings of hopelessness, which she believes are related to her chronic fatigue syndrome and to what she refers to as her "nervous breakdown."  (R. 41).  She has thoughts of suicide weekly.  (R. 45).

Plaintiff claims that she suffers from an edema that prevents her from sitting at her computer for more than ten or fifteen minutes, "because it hurts too much to sit and type."  (R. 37).  Plaintiff testified that she has chronic fatigue syndrome, which causes her to be unable to sleep for several days at a time.  (R. 37-38).  This condition, according to plaintiff, occurs three to four times a month.  (R. 38).  Plaintiff also states that she has panic attacks.  When she has the panic attacks, she feels as though the room is closing in on her and that she cannot breathe, often times causing her to leave a store in the middle of shopping.  Id.  These attacks occur two out of every three times when she leaves her home.  (R. 39).  However, plaintiff also testified that she shops for herself between two and four times a month, at night "because the crowds aren't as bad.  I still get panic attacks sometimes."  (R. 43).

Plaintiff experiences joint pain in her knees, wrists, and ankles that makes it difficult for her to "stoop."  (R. 40).  Plaintiff testified that she sometimes forgets to eat, sometimes binge eats (because she forgets that she has already eaten), and sometimes forgets to take her medicine or takes her medicine twice (having forgotten that she already took it).  Id.  Plaintiff testified that sometimes she is not able to get out of bed, that this condition occurs frequently, and once, during the year prior to her hearing, plaintiff remained in bed for two weeks.  (R. 42).  When

3

asked why she has a negative attitude about things, plaintiff responded:  "Because I don't see an end to this.  And the only thing I can think of is when – if I do get okayed for this, at least then I can get the right drugs and maybe see an end to it."  (R. 43.).

Plaintiff testified that the biggest thing that keeps her from working is the lack of sleep, the inability to concentrate and the pain she experiences.  (R. 47).

The ALJ concluded that, prior to her fifty-fifth birthday, plaintiff could engage in light work, occasionally lift and carry 25 pounds, frequently lift and carry 10 pounds, stand and/or walk at least six hours out of an eight hour work day, sit at least six hours out of an eight hour workday and conduct simple, repetitive tasks and have incidental contact with the public.  (R. 50, 56).   At the hearing, the Vocational Expert (VE) testified that plaintiff could work light, unskilled jobs such as a hand packager, laundry press, or mail clerk.  (R. 56-57).

### Issues

Plaintiff raises three issues on appeal:

1.  Whether the ALJ failed to give controlling weight to the medical evidence from plaintiff's treating physician (Dr. White) without giving reasons supported by the evidence.[2]

2.  Whether the ALJ failed to find plaintiff's complaints and limitations credible without specifying the reason.

3.  Whether the ALJ improperly failed, at step five of his determination, to include all of plaintiff's limitations in the hypothetical presented to the vocational expert or whether he misstated other limitations.

### Discussion

The role of a court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied.  See

---

[2] Plaintiff's statement of the issue refers to her "treating phyicians."  However, her brief only argues that the ALJ failed to give controlling weight to the "opinions and limitations" set out by Dr. White.  (Dkt. # 12 at 7-8).

Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994).   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).   "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."   O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).   A court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the court will not reweigh the evidence or substitute its judgment for that of the ALJ.   Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

**The ALJ's Rejection Of Dr. White's Opinions And Limitations**

Dr. White was plaintiff's treating psychiatric physician.   The proper procedure for evaluating the opinion of a treating physician is well established.   "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's opinion."   Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5).   "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'"   Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished).[3]   Generally, an ALJ should give more weight to opinions from treating physicians.   Watkins, 350 F.3D at 1300 (citing 20 C.F.R. § 404.1527(d)(2)).   However, it is error to give the opinion controlling weight simply because it is provided by a treating source.   Id.

---

[3]  Unpublished decisions are not precedential, but may be cited for their persuasive value.   See Fed. R. App. 32.1:  10th Cir. R. 32.1.

In determining whether the opinion should be given controlling weight, the analysis is sequential.  First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  Id.  If the answer is "no" then this portion of the inquiry is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.  Second, if the ALJ finds the treating physician's opinion is either not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, it is entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527.  Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301, (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).  The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  Id. (citing 20 C.F.R. § 404.1527(d)(2)).  Third, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)).  The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight.  Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

However, the Tenth Circuit has held that a treating physician's opinion need not be given substantial weight if "good cause is shown to the contrary."  Bernal v. Bowen, 851 F.2d 297, 301

(10th Cir. 1988) (citing Frey v. Bowen, 816 F.2d at 513).  For example, "a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence."  Id.

Plaintiff contends that the ALJ did not "address how Dr. White's opinions are inconsistent with the record other than to make the statement."  (Dkt. # 12 at 7).  Specifically, plaintiff argues that "the ALJ committed error when he accepted the consultative opinion of Dr. Lochner in Exhibit 8F over the opinion of Dr. White in Exhibit 16F in establishing the criteria of 12.00C."  Id.  Exhibit 16F is the Mental Medical Source Statement.  This form includes four sections:  Summary Conclusions, Remarks, Functional Capacity Assessment, and Capability to Manage Benefits.  (R. 444-47).  In the Summary Conclusion section, Dr. White was directed to provide a "[d]etailed explanation of the degree of limitation for each [Summary Conclusion] category (A through D) ... in Section III (Functional Capacity Assessment)."  (R. 444).  In completing the Summary Conclusion section, Dr. White rated plaintiff as having marked limitations in ten of the twenty categories, as having severe limitations in two of the categories, and as having moderate limitations in the remaining categories.  (R. 440-43).  However, in Section III (Functional Capacity Assessment), contrary to the instructions, Dr. White provided no meaningful explanation for his ratings.  (R. 447).  Instead, Dr. White included only the following bare conclusions:

> She has marked physical limitations in addition to the mental health difficulties, chronic stress/anxiety.  I recommend disability payments as she would not be able to be employed successfully.

(R. 447).

In considering Exhibit 16F, the ALJ stated that, after careful consideration, Dr. White's opinions were not entitled to controlling weight because the exhibit addressed administrative, not medical, issues such as "what an individual's residual functional capacity is."  (R. 21).  The Court agrees.  Dr. White's opinion in Exhibit 16F was brief, conclusory, and unsupported by medical evidence and, as such, was properly rejected by the ALJ.  Dr. White failed to follow the

instructions on the Mental Medical Source Statement and provided no meaningful information that would explain his ratings.  Thus, the ALJ was not required to provide a factor-by-factor analysis of Dr. White's opinion.  In <u>Lierz v. Astrue</u>, 2009 WL 1956477 (D. Kan) (unpublished), the court stated that a ". . . court will not require a specific factor-by-factor evaluation of the evidence and the opinions so long as the 'ALJ's decision is specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  <u>Id.</u> (citing <u>Oldman v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007).  Additionally, in <u>Oldman</u>, the Tenth Circuit held:

> [W]ell-supported medical evidence satisfies the requirement that the ALJ's decision be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.

<u>Id.</u>  The ALJ was specific in stating the weight he accorded to Dr. White's opinion and the reasons why.  The ALJ's opinion, in this regard, is supported by substantial evidence.

Moreover, plaintiff failed to cite any evidence in the record that could support a finding that Dr. Smith's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Absent such a showing, Dr. Smith's opinion is not entitled to controlling weight under the first step of the sequential analysis in determining controlling weight for a treating physician's opinion.

Finally, Dr. Smith's records do not support the conclusions he reached in Exhibit 16F. Those medical records reflecting Dr. White's involvement with plaintiff consist of a Discharge Summary (R. 212-14), a Comprehensive Psychiatric Evaluation (R. 215), History and Physical Examination (R. 218), Dr. White's notes (R. 256-57, 368-70), an August 24, 2006 letter from Dr. White to Reliance Standard Life Insurance Company (R. 365), and the June 6, 2007 Mental Source Statement (Exhibit 16F) (R. 442-47).

On September 29, 2005, plaintiff was admitted to Parkside Psychiatric Hospital.  (R. 215).   The following day, Dr. White conducted a Comprehensive Psychiatric Evaluation (Inpatient) (R. 215-17) and a History and Physical Examination (R. 218-21).  On the psychiatric evaluation, Dr. White noted that plaintiff was well oriented, was able to recall three out of three simple objects after three minutes, was alert, had limited insight, poor judgment, poor impulse control and average range of intelligence.  (R. 216).  On the physical examination, Dr. White indicated that plaintiff was "well-developed, well-nourished, quite obese, ... , in no apparent distress."  (R. 219).  Dr. White further noted that plaintiff "ha[d] good strength and full range of motion in all extremities with no clubbing, cyanosis or edema, . . ., good muscle tone, good strength and good grasp."  (R. 220).

On October 6, 2005, Dr. White's notes indicate that plaintiff does not want to return to the same job "because it is too stressful."  (R. 214, 256).  However, on October 23, 2005, Dr. White signed plaintiff's Discharge Summary, noting that plaintiff was employed at Decision One but not placing any restrictions on plaintiff's employment.  (R. 212-14).   The Discharge Summary describes plaintiff's mental status upon discharge as follows:  "mood was, 'sleepy,' but she is laughing easily.  She was hopeful.  She denied abnormal perceptions.  She denied thoughts to harm herself or others."  (R. 213).  Her discharge diagnosis was:

Axis I – bipolar disorder, mixed presentation, severe, with psychotic features, chronic

Axis II – deferred

Axis III – hypertension, cardiac disease, chronic pain disorder

Axis IV – Problems related to primary support, occupation, chronic illness

Axis V – Current GAF:  42 (Admission GAF 28)  Highest GAF past year:  58

(R. 213).  Plaintiff was "discharged home to the care of herself."  (R. 214).

Subsequently, on November 7, 2005, Dr. White indicated that plaintiff reported her medication was working, that she was smiling and productive, was in a good mood and was not

thinking about harming herself and others.  (R. 256).  Dr. White's December 8, 2005 notes contain quotes from plaintiff indicating that she had quit crying, was in a pretty good mood, was sleeping about 10 hours, was not crying, and felt pretty good.  (R. 422).  Dr. White's February 20, 2006, and March 20, 2006 notes contain similar comments to those found in his November 7 entry; although, the February and March notes do include comments by plaintiff that indicate she was experiencing some emotional difficulties.  (R. 257, 368-70).  Dr. White's June 13, 2006 notes quote plaintiff as saying that "[n]othing is working.  I don't feel good."  (R. 373).  However, the same notes indicate that plaintiff "smiles and laughs easily," is sleeping "fairly well, seven to eight hours a night," and is clearly obese.  (R. 373).  On August 21, 2006, plaintiff called Marilyn Clarke, an LCSW at Parkside and informed Ms. Clarke that she had been denied Social Security Disability, that she had consulted with an attorney and was appealing the decision, and that she needed to talk to Ms. Clarke about a statement which her attorney had requested.  (R. 380).  Later that day, Dr. White saw plaintiff and his notes quote her as saying that she could not sleep, had run out of pills, and was crying again, but that "she is hopeful, . . ., denies thoughts to harm herself or others, . . ., denies abnormal perceptions."  (R. 375-76).  Three days later, on August 24, 2006, Dr. White co-authored a letter to plaintiff's insurance company, stating that plaintiff was in need of twice monthly psychotherapy, that plaintiff suffered from Bipolar Disorder (mixed, severe, and psychotic features), that she suffered from a number of physical problems, that her adjustment was "fragile," and that she had shown improvement, and that plaintiff is "disabled and unable to work in any capacity at this time."  (R. 365-66).  This bare conclusion was the first time Dr. White indicated that plaintiff was "disabled" or "unable to work."

On October 10, 2006, Dr. White noted that plaintiff had been walking a lot more, sleeping fairly well, smiles, is in a good mood, and is hopeful.  (R. 433).  In Dr. White's January 17, 2007 notes, he indicated that plaintiff had been off psychotropic medications for several

weeks, was sad and had poor sleep but is hopeful "it is not suicidal at this time." (R. 435). Dr. White also noted that plaintiff feels that she needs to have gastric bypass surgery to help her lose weight and that she will soon be on disability, which could help with her surgery. Id. Almost six months later, not having seen plaintiff in the interim, Dr. White completed the Mental Medical Source Statement, which is addressed above. (R. 447).

Dr. White's medical records simply do not provide any meaningful link between plaintiff's condition and the bare conclusions that he reaches in his August 24 letter and the Mental Medical Source Statement. Instead, Dr. White's medical records indicate that plaintiff was having emotional difficulties and that, with treatment, those difficulties were lessening. The records even reflect that plaintiff wanted to obtain disability benefits so that she could afford the medication needed to get her issues under control. Thus, Dr. White's medical records, rather than supporting plaintiff's argument, likely explain why Dr. White failed to explain his conclusion. Again, the ALJ's decision is supported by substantial evidence.

**Whether The ALJ Failed To Find The Claimant's Complaints And Limitations Credible Without Specifying The Reason**

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence, because the ALJ failed to give "full credibility to the [plaintiff's] complaints." (Dkt. # 12 at 8). The plaintiff contends that if full credibility had been given to her complaints, then under the last hypothetical given to the vocational expert (VE), she is disabled. Id. The Court finds no reversible error in the ALJ's evaluation of plaintiff's credibility.

During the hearing, the ALJ offered one hypothetical to the VE. (R. 49-51). Thereafter, plaintiff's counsel presented the VE with four additional hypotheticals, with all but the last being a variant of the ALJ's hypothetical. The final hypothetical offered by plaintiff's counsel was as follows:

And just the last hypothetical, if all of the testimony of the claimant is taken as credible, are there any jobs that she can perform in the local or national economies?

(R. 51).  The VE responded to this hypothetical by stating that if all of the plaintiff's testimony is credible, then there are no jobs in the local or national economy that she can perform.  However, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely credible."  (R. 19-20).  For this reason, the ALJ rejected plaintiff's last hypothetical.

At the hearing, Plaintiff testified that she was continuing to undergo counseling at Parkside on a monthly basis; that she has peripheral edema, that the peripheral edema effects her ability to use her hand for more than 10-15 minutes at a time; that she cannot hold a pen to write; that she has chronic fatigue and fibromyalgia, which effect her ability to get restful sleep; that two to three times a month she is unable to sleep three to four days at a time, which effects her ability to concentrate; that she has panic attacks which occur two out of three times when she leaves her house; that she only leaves her house a couple of times a week; that she eats erratically (both forgetting to eat and binge eating); that she has feelings of hopelessness and periods when she does not get out of bed, dress herself or perform personal hygiene; and, that she has difficulty remembering both simple and complex tasks and an inability to concentrate. (Dkt. #12 at 4-5).

As to plaintiff's fibromyalgia and chronic fatigue, which plaintiff claims are documented by her treating physician at Parkside (R. 216) and by Dr. Boyd, the examining physician for Social Security (R. 326), the ALJ found that "there is no objective medical evidence in the file to document these diagnoses."  As a result, the ALJ found that these are not "medically determinable impairments."  (R. 18).  The Court agrees.  Plaintiff's fibromyalgia and chronic fatigue are evidenced solely by plaintiff's own statements and not by any objective medical evidence.  Plaintiff's only citations to evidence of these conditions in the record are to Dr. White's Comprehensive Psychiatric Evaluation (R. 216), the Internal Medicine Examination of

Dr. G. Bryant Boyd, MD (R. 326), and a St. Francis Physician Report of Dr. Jimmy Z. Swan, MD (R. 199).  It is clear from a review of these documents that none of these doctors diagnosed plaintiff with fibromyalgia or chronic fatigue.  Rather, all three physicians were merely recording what plaintiff told them.

As to plaintiff's other complaints, no lengthy discussion is necessary, since the ALJ undertook a detailed analysis of the reasons he found her testimony "not entirely credible."  (R. 19-21).  The ALJ included citations to the record and to specific medical evidence that supported his conclusions.  Id.  In addition, the ALJ did not discount all of plaintiff's complaints, and he specifically took those complaints into account in formulating plaintiff's RFC.  Id.

For the foregoing reasons, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

## Whether The ALJ Improperly Failed, At Step Five Of His Determination, To Include All Of The Claimant's Limitations In The Hypothetical Presented To The Vocational Expert Or Whether He Misstated Other Limitations

Plaintiff argues that the ALJ failed to include all of her limitations in the hypothetical to the VE.  Specifically, plaintiff asserts that the ALJ ignored Dr. White's limitation that plaintiff could only lift 10 pounds and that there was no evidence that plaintiff could lift 25 pounds (which the ALJ included in his hypothetical).  Plaintiff next argues that the ALJ failed to include the limitations presented by plaintiff's edema, chronic fatigue, and fibromyalgia.  Finally, plaintiff argues that when the VE was presented with separate hypotheticals with the limitations of panic attacks, edema, and chronic fatigue, the VE found plaintiff disabled.  With respect to this last argument, it is clear that the ALJ did not include these ailments in his hypothetical, because he did not find the limitations testified to by plaintiff to be "entirely credible."  Since the Court found the ALJ's credibility determination to be supported by substantial evidence, this argument fails.

As to the second argument, the Court has already found that there was no medical support in the record for plaintiff's chronic fatigue and fibromyalgia. Thus, the ALJ properly declined to include those ailments in his hypothetical. As to plaintiff's peripheral edema, the only medical evidence supporting plaintiff's claim is a Jenks Health Team-Progress Note by Dr. Wooten dated June 6, 2005 and another dated November 15, 2005. (R. 265, 285). At the hearing, plaintiff complained that, due to peripheral edema, she could not use her hands or wrists for more than 10 to 15 minutes at a time without taking a break for an equal amount of time. (R. 37). Plaintiff's counsel included the same limitation in his hypothetical to the VE. (R. 52-53). However, the ALJ correctly noted that when plaintiff was examined by Dr. Grant Boyd in June, 2006, plaintiff had no edema.[4] (R. 18, 320-27). Dr. Boyd examined plaintiff for range of motion of joints, range of motion of spine, range of motion of hands and wrists, and chest discomfort. (R. 320). His examination records are simply not consistent with plaintiff's testimony. Thus, the ALJ's decision not to include any limitations related to a peripheral edema is supported by substantial evidence.

Regarding the 25 pound limitation, the ALJ found that plaintiff "should be able to lift and/or carry 25 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day and sit up to 6 hours in an 8-hour day without excessive pain or exacerbation of her symptoms." (R. 20). Plaintiff argues that there is no support in the record for the ALJ's finding, as it relates her ability to "lift and/or carry 25 pounds occasionally." (Dkt. # 12 at 10). The only evidence cited by Plaintiff is a Matrix Absence Management, Inc. form completed by Dr. White on October 5, 2005. (R. 461). On the form, Dr. White checked a box indicating that plaintiff "can lift/carry 10 lbs maximum and occasionally carry small objects: SEDENTARY WORK."

---

[4] At the hearing, plaintiff also complained of pain in her knees and ankles that was "edema related." (R. 39-40). Despite these complaints, when she was examined by Dr. Jimmy Swan on September 23, 2005, Dr. Swan failed to indicate that plaintiff had an edema in her arms, and he specifically noted that plaintiff did not have any edema in her lower extremities. (R. 200).

Id.  Dr. White did not explain his conclusion, and there is no indication that Dr. White actually examined plaintiff to determine what her lifting capability was.  Id.  Thus, Dr. White's opinion in this respect ". . . may be rejected [because] it is brief, conclusory and unsupported by medical evidence."  Id.; see supra at 8-9.  In addition, Dr. White's specialty is mental health, not physical limitations.  Thus, his opinion is not entitled to any additional weight in this area.  20 C.F.R. §§ 404.1527 (d)(5), 416.927(d)(5).

Moreover, there is substantial evidence in the record supporting the ALJ's decision.  On plaintiff's December 10, 2005 application for social security benefits, she did not identify "lifting" as something that her "illnesses, injuries, or conditions" effect.  (R. 124).  In her September 27, 2006 Function Report-Adult, plaintiff indicated that she is able to vacuum, do dishes, do the laundry, and dust.[5]  (R. 167-68).  Moreover, Dr. Grant Boyd, while conducting an internal medicine examination of plaintiff on June 27, 2006, recorded that "plaintiff states that mental problems are her disabilities. . ..  The claimant can still walk, stand, travel, lift, handle objects, see, hear and speak."  (R. 326) (emphasis added).  Dr. Boyd further noted that plaintiff's grip is "strong and equal bilaterally," and she has "[n]o asymmetry of muscles . . ..  Muscles appear strong and normal.  …  Gait:  Normal for speed, stability and safety without assistive device.  Dexterity:  She is able to use her hands for gross and fine manipulation."  (R. 327).  Fifteen days later, Dr. Horace Lukens, conducted another evaluation.  (R. 329-32).  Dr. Lukens noted that:

> [Plaintiff] is casually dressed, grooming and hygiene is slightly unkempt, but appropriate.  Attitutude is cooperative.  She participates actively.  Posture and gait are normal.  Motor activity is calm.
>
> . . .
>
> [Plaintiff] presently lives alone and states that she spends most of her time watching TV, cleaning her house, playing computer games or taking care of her cat.

---

[5] On this report, plaintiff also stated that she was "not sure how many lbs I can lift."  (R. 173).

Id.  The foregoing is more than sufficient evidence for the ALJ to conclude that plaintiff could lift and/or carry 25 pounds occasionally, and plaintiff has failed to identify any evidence to the contrary.

### Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The Court further finds that there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding the plaintiff not disabled prior to her fifty-fifth birthday is hereby AFFIRMED.

IT IS SO ORDERED this 3rd day of March, 2010.

_____

T. Lane Wilson
United States Magistrate Judge

16